IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00600 WDM

—————————————————————————————————————

TRINITY UNIVERSAL INSURANCE COMPANY OF KANSAS, INC.,

     Plaintiff,

v.

D.R. HORTON, INC.—DENVER D/B/A D.R. HORTON—TRIMARK SERIES, *et. al.*

     Defendants.

—————————————————————————————————————

**TRAVELERS INDEMNITY INSURANCE COMPANY, ST. PAUL FIRE & MARINE, AND UNITED STATES FIDELITY & GUARANTY COMPANY'S BRIEF IN OPPOSITION TO EMPLOYERS MUTUAL CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT (DOC. # 553) AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (DOC. # 554)**

—————————————————————————————————————

     Travelers Indemnity Insurance Company ("Travelers Indemnity"), St. Paul Fire & Marine ("St. Paul"), and United States Fidelity & Guaranty Company ("USF&G")(collectively referred to as the "Travelers Entities"), by and through their counsel, Miletich Pearl LLC, hereby file the following Brief in Opposition to Employers Mutual Casualty Company's ("EMC") Motion for Summary Judgment (Doc. # 553) and Memorandum in Support of Motion for Summary Judgment (Doc. # 554), and in support thereof, state:

## I.    INTRODUCTION

     This insurance coverage dispute involves the question of which carriers owed a duty to defend D.R. Horton, Inc. – Denver, d/b/a D.R. Horton – Trimark Series ("D.R. Horton") in

1

connection with a construction defect action filed by the St. Andrews at Plum Creek Condominium Association (the "Association") against D.R. Horton in the District Court of Douglas County, Colorado, Case No. 04CV1638 (the "Underlying Action"). D.R. Horton hired certain subcontractors to help construct the condominium units and common areas at St. Andrews at Plum Creek, as defined by the Association in the Association's Complaint (the "Project"). EMC insured three of the subcontractors, AAA Waterproofing, Inc. ("AAA"), Dove Creek Enterprises, Inc. ("Dove Creek"), and D&S Landscaping, Inc. ("D&S") (collectively referred to as the "Subcontractors").

Trinity Universal Insurance Company of Kansas ("Trinity") filed this action after D.R. Horton made a demand upon certain insurance carriers for payment of D.R. Horton's defense fees and costs arising out of the Underlying Action. The Travelers Entities have filed counter and/or cross claims against certain parties named herein alleging claims of Equitable Contribution and Indemnity, Equitable Subrogation, Declaratory Relief, and/or Unjust Enrichment. The Travelers Entities have filed such cross claims against EMC, asserting that because the duty to defend is broad and is governed solely by the four corners of the Complaint filed by the Association in the Underlying Action (the "Association's Complaint"), EMC has a duty to defend unless it can rule out _any possibility_ of coverage.

EMC claims that it does not have a duty to defend any of its insureds (AAA, D&S and Dove Creek). The basis of its argument is that: 1) EMC claims that it did not issue a certificate of insurance naming D.R. Horton as an additional insured under the D&S and Dove Creek policies, and, in the absence of such certificates, has no duty to defend or indemnity D.R. Horton

2

under those policies; and 2) even if this court determines that D.R. Horton has additional insured status under the D&S and Dove Creek policies, the only property damage alleged in the Association's Complaint incurred after the subcontractors had completed their operations.  This second position is EMC's exclusive argument with respect to the AAA Waterproofing policy (appearing to concede that D.R. Horton qualifies as an additional insured under the AAA policy).

EMC's arguments are insufficient to support a ruling in its favor on summary judgment. With respect to the D&S and Dove Creek policies, D.R. Horton has produced Certificates of Insurance, establishing that D.R. Horton was a Certificate Holder on the EMC policy issued to Dove Creek for the policy period of February 25, 2001 through February 25, 2002.  D.R. Horton has also produced a Certificate of Insurance establishing that D.R Horton was a Certificate Holder on the EMC policy issued to D&S for the policy period of August 2, 1997 through August 2, 1998.  On both Certificates, it is noted that the policies contain blanket endorsements for additional insured.

With respect to EMC's second argument, EMC argues that there was no damage suffered by the Association until the work of the Subcontractors was first put to its intended use.  EMC submits that because Blanket Additional Insured Endorsements limit coverage to damages that occurred during the Subcontractor's "ongoing operations," there should be no coverage for damages that occurred after the work of the Subcontractors was put to its intended use (or, in other words, "completed".)     Because the duty to defend is limited by the four corners of the Complaint, and because the Association's Complaint raises the possibility of property damage

during both the ongoing operations of the Subcontractors and during the EMC policy periods, EMC should have defended D.R. Horton under the Subcontractors' policies. The Travelers Entities therefore ask this court to deny EMC's Motion for Summary Judgment.

## II.  RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Admitted.

2.      Admitted that the Association's Complaint, attached as Exhibit A to EMC's Memorandum in Support of Motion for Summary Judgment, states that "[t]he Community's existing 86 units were completed in approximately June 2001." See Association's Complaint, attached to EMC's Memorandum as **Exhibit A, ¶** 2, (Doc. 554-2, p. 2 of 30, ¶ 2).

3.      Admitted that the Association's Complaint alleged elements of construction defects to the units and common elements of the Project as set forth in Paragraph 43(a) – (g) of the Association's Complaint, attached to the EMC's Memorandum as **Exhibit A** (Doc. 554-2, p. 11 – 14 of 30).

4.      Admitted that Paragraph 4 of EMC's Undisputed Facts properly quotes a portion of paragraph 45 of the Association's Complaint, but deny that the Association's Complaint alleges that the Subcontractors' work was put to its intended use by June 2001.

5.      Admitted.

6.      Admitted that EMC issued commercial general liability policies to Dove Creek for the policy periods of February 25, 2000 through February 26, 2006. Denied that the policy numbers all contain 2D2-37-19. Rather, **Exhibits C, D,** and **E**, attached to EMC's Memorandum, evidence that the policy numbers issued by EMC to Dove Creek for the policy

periods of February 25, 2000 through February 25 of 2003 are identified as policy numbers 2X2-37-19-01; 2X2-37-19-02, and 2X2-37-19-03, consecutively.[1]

7.      Admitted.

8.      Admitted that the AAA policies are endorsed with Form CG 7174.  Travelers Indemnity, St. Paul and USF&G further state, however, that a Certificate of Insurance exists listing form CG 20 10 11 85 as well.

9.      The Travelers Entities are without information to either admit or deny the facts of paragraph 9.

10.      Admitted that the policies issued by EMC to Dove Creek are endorsed with CG 7174 and CG 7482.

11.      Denied.  There were certificates issued.  *See* Doc. 663-2.

12.      The Travelers Entities are without information to either admit or deny the facts of paragraph 12.

13.      Admitted that the policies issued by EMC to D&S Landscaping are endorsed with CG 7174.

14.      Denied.  There was a Certificate issued.  *See* **Exhibit 4.**

15.      The Travelers Entities are without information to either admit or deny the facts of paragraph 15.

### III.  STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

1.      EMC refused to defend D.R. Horton in the Underlying Lawsuit under any of the

---

[1] It is not until the policy issued for the policy period of February 25, 2003 through February 25, 2004 that the

Subcontractors' policies.

2.     The Association's Complaint alleges that the St. Andrews Community consists of 33 buildings (including one free-standing clubhouse) containing a total of 86 condominium units.  The "Project," as defined in the Association's Complaint, allegedly consists of the 86 condominium units, plus the common areas and common elements and all other structures, spaces and facilities that comprise the property owned by the St. Andrews community.  *See* Association's Complaint, p. 2, ¶ 1, attached to EMC's Memorandum as **Exhibit A**, (Doc. No. 554-2, p. 2 of 30).

3.     AAA entered into an Independent Contractor Agreement with D.R. Horton on or about June 21, 2000.  *See* AAA Subcontract Agreement, attached as **Exhibit 1**.

4.     AAA was responsible for damp-proofing and installation of foundation drains. *See* **Exhibit 1,** Addendum A, Scope of Work – Dampproofing and Foundation Drains.

5.     D&S Landscaping entered into an Independent Contractor Agreement with D.R. Horton on or about May 11, 1999.  *See* D&S Subcontract Agreement, attached as **Exhibit 2.**

6.     D&S was responsible for furnishing all labor and materials, equipment necessary to complete the exterior landscaping and irrigation of buildings as assigned by address.   *See* **Exhibit 2,** Addendum A, Scope of Work – Landscaping, Page 1 of 4, ¶ 8A.

7.     D.R. Horton entered into an Independent Contractor Agreement with Dove Creek on April 30, 1999. *See* Independent Contractor Agreement, attached hereto as **Exhibit 3.**

8.     According   to   the   Independent   Contractor   Agreement,   Dove   Creek   was

---

policy number converts to 2D2-37-19-04.  *See* EMC's Memorandum, **Exhibits F, G, H**, and **I**.

responsible for furnishing and providing all labor and equipment necessary to complete the fine grading per plan.  *See* **Exhibit 3**, Addendum A, Scope of Work – Fine Grading, page 1 of 2, ¶ 8.

9.      The Association's Complaint alleges damages associated with and arising out of the perimeter drainage system, the landscaping, and the grading.  See Association's Complaint, attached to EMC's Memorandum as **Exhibit A,** ¶ 43, (Doc. 554-2, p. 11 - 13 of 30).

## IV. STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment is appropriately granted when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. **F.R.C.P. 56(c)**.  In applying this standard, the court must review the factual record in the light most favorable to the nonmoving party. ***Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.***, 912 F.2d 1238, 1241 (10th Cir. 1990).  Here, the Association's Complaint alleges facts which establish the possibility of coverage for D.R. Horton under the Maryland Casualty policies, and thus, Maryland Casualty had a duty to defend D.R. Horton.   Furthermore, any doubt as to the existence of a disputed material fact must be resolved in favor of a trial issue of fact, rendering summary judgment inappropriate. ***Boren v. Southwestern Bell Tel. Co.***, 933 F.2d 891, 892 (10th Cir. 1991).

## V. ARGUMENT

As a federal court sitting in diversity, the court is charged with ascertaining and applying Colorado law to the end that the result obtained in federal court is the result that would have been reached if this litigation had been pursued in a Colorado court. ***Lutz Farms v. Asgrow Seed Co.***, 948 F.2d 638, 641 (10th Cir. 1991).  The pronouncements of the Colorado Supreme Court are deemed authoritative statements of Colorado law. ***Romero v. International Harvester Co.***,

979 F.2d 1444, 1449 n.3 (10th Cir. 1992).

### A.     An Insurer's Duty to Defend

Under Colorado substantive law, an insurer's duty to defend arises when the underlying complaint against the insured alleges any facts that might potentially fall within the coverage of the policy, and is based solely on the allegations stated in the underlying complaint. *Cotter Corp. v. American Empire Lines Ins. Co.*, 90 P.3d 814, 827 (Colo. 2004) (en banc); *Hecla Mining Co. v. New Hampshire Insurance Co.*, 811 P.2d 1083, 1089 (Colo. 1991) (en banc). The Colorado Supreme Court has gone so far as to rule that an insurer can look no further than the four corners of the pleadings to determine whether a duty to defend exists. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo. 2003), citing *Hecla,* 811 P.2d at 1089.  As such, an insurer cannot utilize extrinsic evidence or attempt to gather facts outside the complaint in an attempt to deny a defense. *McGowan v. State Farm Fire & Cas. Co.,* 100 P.3d 521, 523 (Colo. App, 2004), *citing Cyprus*, 74 P.3d at 299.  The duty to defend encompasses any potential claims raised by the facts and is so broad that even if an insurer's duty to defend is not apparent from the pleadings, the insurer must accept the defense of the claim when the allegations from the complaint state any claim that is *potentially within the policy coverage or there is some doubt as to whether a theory of recovery within the policy's coverage has been pleaded*. *Cotter Corp,* 90 P.3d at 827 (emphasis added).  Moreover, when an insurer refuses to defend, this "four corners of the complaint" rule with respect to the broad duty to defend *applies both before and after* the completion of the underlying litigation. *Id.* at 827 – 828.  Because EMC refused to defend D.R. Horton in the Underlying Lawsuit, under any of the Subcontractor's

policies, EMC cannot now rely upon extraneous documents in order to support its allegation that it was not obligated to participate in the defense of D.R. Horton.

**B.      D.R. Horton Qualifies as an Additional Insured Under the AAA, D&S and Dove Creek Policies.**

*1.  AAA Waterproofing*

EMC apparently admits that D.R. Horton qualifies as an additional insured under the AAA policies.  The Travelers Entities therefore will not address this issue herein.

*2.      D&S and Dove Creek*

The blanket additional insured endorsements issued by EMC to Dove Creek and D&S Landscaping provide additional insured status to "any person or organization (called Additional Insured) whom you are required to add an as Additional Insured on this policy under a written contract or agreement where a Certificate of Insurance showing that person or organization as an Additional Insured has been issued." *See* EMC's Memorandum, Doc. # 554, Statement of Undisputed Facts, ¶¶ 10 and 13, and exhibits referenced therein.   Under the plain language of the Blanket Additional Insured Endorsement, only two things are therefore required for D.R. Horton to claim that it is an additional insured under the Dove Creek and D&S policies:  1) a written contract requiring the Subcontractors to name D.R. Horton as an additional insured, and 2) a Certificate of Insurance.

There seems to be no dispute that the Independent Contractor Agreements entered into by Dove Creek and D&S each require the Subcontractors to obtain insurance coverage naming D.R. Horton as an additional insured.  *See* **Exhibits 2** and **3**, ¶ 12, "Insurance", located on page 3 of the Independent Contractor Agreements.  The first requirement is therefore met as to each

9

Subcontractor.

With respect to the second requirement, EMC claims that no Certificate of Insurance, showing that D.R. Horton was an Additional Insured under the policies, was issued by EMC under either the Dove Creek or D&S policy. Initially, EMC based its position on an Affidavit allegedly from Vernon Limbrecht, in which EMC asserted that EMC did not issue any Certificates of Insurance on either the Dove Creek or D&S policies. *See* **Exhibit L,** Doc. # 554-13, which is an Affidavit from Mark Schoenbaum. When EMC was presented with Certificates of Insurance, contradicting Mr. Schoenbaum's Affidavit with respect to the Dove Creek policies, EMC then filed its Motion to File Supplemental Affidavit in Support of Summary Judgment Motion (Doc. # 633), attaching a new affidavit from the EMC insurance producer, Henry Ham, of Henry Ham, Inc. Attached to the Affidavit of Henry Ham are Certificates of Insurance, issued to D.R. Horton with respect to the Dove Creek policies (Doc. 633-2). On those Certificates, D.R. Horton is identified as a "Certificate Holder" under the EMC policies issued to Dove Creek for the policy periods of February 25, 2000 through February 25, 2002. Each Certificate attached to document 633-2 indicates that there is a "Blanket Addition" on the general liability policies issued to Dove Creek. Moreover, one Certificate clearly states that D.R. Horton is an "additional insured" under form CG2010. *See* Doc. 633-2, p. 5 of 7.

EMC's supplemental argument seems to now suggest that even through Certificates were in fact issued to D.R. Horton under the Dove Creek policies, those Certificates are insufficient to establish D.R. Horton as an Additional Insured because that they were issued by Henry Ham, Inc. after the policy expired. EMC has provided no support for the fact that the

10

alleged late issuance of the Certificate is sufficient to defeat coverage for D.R Horton as an Additional Insured under the EMC policies.

The term "Certificate of Insurance" is not defined by the EMC policies. By filing a Supplemental Affidavit in Support of its Motion for Summary Judgment, EMC seems to acknowledge that the Certificates issued by Henry Ham, Inc. each qualify as a "Certificate of Insurance" as contemplated by the Blanket Additional Insured Endorsement. Although the plain language of the Blanket Additional Insured Endorsement does require that the written contract must be "currently in effect or becoming effective during the term of this policy" and "executed prior to the 'bodily injury' or 'property damage,'" the same is not true with respect to the Certificate of Insurance.[2]   Rather, according to the plain language of the Endorsements, the entity claiming to be an Additional Insured must merely hold a Certificate that shows they are an Additional Insured under the named insured's policy. D.R. Horton does. Because the Additional Insured Endorsements do not require that the Certificates be issued either during the term of the policy or before the property damage occurred, EMC's argument that the Certificates on the Dove Creek policy were issued after the policy expired is meaningless. D.R. Horton and Dove Creek entered into a written contract requiring D.R. Horton to be added as an Additional Insured, and a Certificate of Insurance was issued by EMC's producer Henry Ham, Inc., showing that D.R. Horton was an Additional Insured under the policy. The requirements of the Blanket Additional Insured Endorsement have therefore been met. Under the plain language of the Dove

---

[2] See Additional Insured Endorsements, Doc. 554-4 page 26/37; Doc. 554-5, p. 26/48; Doc. 554-6, p. 30/67; Doc. 554-7, p. 33/45; Doc. 554-8, p. 38; Doc. 554-9, p. 39/51; Doc. 554-10, p. 21/33, and Doc 554-11, p. 1/32 (applicable forms).

Creek policies, D.R Horton qualifies as an Additional Insured.   EMC therefore has no valid

basis to deny its duty to defend D.R Horton in the Underlying Lawsuit under the Dove Creek

policies.

Like the Dove Creek policies, contrary to the Affidavit of Mark Shoenbaum, a

Certificate of Insurance was also issued to D.R. Horton under the D&S Landscaping policy. *See*

Certificate of Insurance, attached as **Exhibit 4**.   This Certificate reveals that there was a

"Blanket" endorsement issued on the D&S Landscaping policy of August 2, 1997 through

August 2, 1998.   This Certificate therefore calls into question the veracity of the Affidavit of

Mark Schoenbaum.   Although the Travelers Entities acknowledge that this Certificate of

Insurance was issued on a policy that pre-dates the D&S subcontract, at the very least, additional

discovery is necessary to determine whether CRS, Inc., EMC's insurance producer, issued

Certificates naming D.R. Horton as an additional insured in the relevant policy periods.

Summary Judgment is therefore improper at this time.

> **C.     Because the Complaint Does Not State When the Subcontractors Had Completed Their Ongoing Operations, EMC has a Duty to Defend D.R. Horton Under the AAA, Dove Creek, and D&S Policies**

An insurer has a heavy burden to overcome in avoiding the duty to defend, such that "the

insured need only show that the underlying claim may fall within policy coverage; the insurer

must prove it cannot." ***Compass Insurance Co. v. City of Littleton***, 984 P.2d 606, 614 (Colo.

1999), *quoting **Standun, Inc. v. Fireman's Fund Ins. Co***., 62 Cal. App. 4th 882, 73 Cal.Rptr.2d

116, 120 (Cal. Ct. App. 1998)).   As established below, the underlying claim for damage may fall

within the Subcontractor's policy periods, as each of the Subcontractors were on the job site

*during* the EMC policy periods in question:

*1.  AAA*

The subcontract entered into between D.R. Horton and AAA was dated June 21, 2000. *See* Subcontract, attached hereto as **Exhibit 1.**  The EMC policy issued to AAA was in effect from January 1, 2000 through January 1, 2001.   EMC admits that, at the earliest, AAA completed its work at the Project by January 1, 2001.  *See* EMC's Memorandum (Doc. # 554), Statement of Material Undisputed Fact, p. 7 of 24, ¶ 8.  The ongoing operations of AAA were therefore during the EMC policy period.   Of interest, and not provided to the court by EMC, a Certificate of Insurance was also issued to D.R. Horton for policy IX0 76-42-00, which states that the AAA policy included CG 20 10 11 85 as an additional insured endorsement.  *See* AAA Waterproofing Certificate of Insurance, attached as **Exhibit 5.**  Form CG 20 10 11 85 includes coverage for the additional insured for completed operations.

*2.  D&S Landscaping*

The subcontract entered into between D.R. Horton and D&S was dated May 11, 1999. *See* Subcontract, attached hereto as **Exhibit 2.**  The EMC policies issued to D&S were in effect from August 2, 1999 through August 2, 2001.  EMC admits that, at the earliest, Dove Creek completed its work at the project by June 2001.  *See* EMC's Memorandum (Doc. # 554), Statement of Material Undisputed Fact, p. 8 of 24, ¶ 15.  The ongoing operations of D&S were therefore during the EMC policy period.

*3.  Dove Creek*

The subcontract entered into between D.R. Horton and Dove Creek was dated April 30,

1999.  *See* Subcontract, attached hereto as **Exhibit 3.**  The EMC policies issued to Dove Creek were in effect from February 25, 2000 through February 25, 2006.  EMC admits that, at the earliest, Dove Creek completed its work at the project by January 22, 2001.  *See* EMC's Memorandum (Doc. # 554), Statement of Material Undisputed Fact, p. 8 of 24, ¶ 12.  The ongoing operations of Dove Creek were therefore during the EMC policy period.

While Travelers Indemnity, St. Paul and USF&G acknowledge that "ongoing operations" are not "completed operations," as set forth by the court in ***Weitz Co., LLC v. Mid-Century Ins. Co.***, 181 P.3d 309 (Colo. App. 2007), *cert. denied* (2008), EMC has not met its heavy burden of establishing that the Association's Complaint alleges damages that were exclusively outside the "ongoing operations" of the Subcontractors.   Unlike this case, in ***Weitz***, the subcontractor commenced work on or about October 27, 1998, and completed its work no later than June 3, 1999, when a certificate of occupancy for the building was issued. ***Id.*** at 311.  The ***Weitz*** court specifically noted that the Mid-Century policy at issue was purchased *following the completion of the project,* and that the subcontractor's insurance policy in effect *during* construction, if any, was *not before the court*. ***Id.***   (Emphasis added).

In ***Weitz,*** the court concluded that because the policy in question was issued *after* the office building was completed, ergo, *after* the ongoing operations of all subcontractors were completed, the only potential for coverage under the policy was if the policy contained coverage for completed operations.  It did not.  Here, the facts are different – the policies before this court were undisputedly *in effect during* the time period that each Subcontractor was performing its *ongoing operations* at the Project.  The question here is, therefore, not whether the policy in

14

question was in effect during the ongoing operations, but whether the Association's Complaint alleges damages during the ongoing operations of the Subcontractors.  If the Complaint alleges even the *possibility of damages* during the Subcontractors' ongoing operations, then EMC owes D.R. Horton, as an additional insured under the policies, a duty to defend.

The Complaint does allege the possibility of damages during the Subcontractor's ongoing operations.  For example, the Association's Complaint alleges that:

> *At the time the Defendants* . . . *constructed* . . . *the Project*, . . . Each of the Defendants knew or should have known of . . . inherent risks, including the risk that the intrusion of water into such soils and/or other improper construction techniques could result in pressures that might imperil the structural integrity of the Project; and each knew or should have known that if any project is to be constructed on such soils, such project should be designed and constructed in such a manner as to be able to withstand the pressures exerted and the risks inherent in such a site.  Despite these facts, *certain portions of the structural elements of the Project were not adequately constructed* and/or designed *to withstand foreseeable pressures and loads resulting from the construction* and/or design.  At the time the Defendants developed, designed, constructed and/or sold the Project, each knew or should have known that construction of projects on the type of soils presented on the site on which the Project was built constituted an inherently dangerous activity, but failed to disclose the same to any member of the Association either prior to or after purchase of a unit.

*See* Association's Complaint, p. 8 - 9, ¶ 31 (emphasis added), attached to EMC's Memorandum as **Exhibit A**, (Doc. No. 554-2, p. 8 of 30). The Association went on to assert that:

> Upon information and belief, *the various subcontractors* and independent contractors *involved in the* design, development, and *construction* of the Project, *and responsible for creating the defectively* designed and *constructed elements described elsewhere in this Complaint*, . . . *were delegated a part of these* development and *construction activities by Horton and Trimark* . . .

*See* Association's Complaint, p. 9, ¶ 32 (emphasis added), attached to EMC's Memorandum as **Exhibit A**, (Doc. No. 554-2, p. 9 of 30).  The Association's Complaint further

alleges that:

> *At the time Defendants* . . . *improved*, *constructed*, and/or conveyed interests in *the Project, Defendants*, . . . *knew* . . . *that such* design and *construction would not result in the Project being constructed in a good and workmanlike manner, and that such design and construction would result in the Project likely not complying with all applicable codes, and would not be fit and sound for its reasonably anticipated use*.

*See* Association's Complaint, p. 14 – 15, ¶ 49 (emphasis added), attached to EMC's

Memorandum as **Exhibit A**, (Doc. No. 554-2, p. 14 of 30).   And lastly, the Association's

Complaint alleges that construction defects were present at the time of construction, stating:

> The following material information . . . was or should have been known to Defendants Horton and Trimark:
>
> * * *
>
> c.   *The construction of the Project* failed to incorporate one or more of the following methods of construction, among others:  proper grading and drainage, proper fill and soil preparation, proper backfill, proper foundation design, proper lateral steel reinforcement, proper lateral support, and other proper construction techniques;
>
> d.   *The Project was not built* in compliance with applicable laws, plans, specification, engineering recommendations, land development regulations, ordinances, and the building code.  Noncompliant elements include, but are not limited to those items listed in Paragraph 43, above.

*See* Association's Complaint, p. 15, ¶ 52 (emphasis added), attached to EMC's

Memorandum as **Exhibit A**, (Doc. No. 554-2, p. 15 of 30).

The above paragraphs of the Association's Complaint raise the possibility that damages

were occurring during the construction and development of the Project.  Damages therefore were

potentially occurring not only during the ongoing operations of the Subcontractors, but during

the EMC policy periods.  The holding in *Weitz* is thus inapposite.  EMC therefore argues that the

16

Association's Complaint limits the damages to only those occurring after the ongoing operations of the Subcontractor were completed. EMC places heavy weight on paragraph 45 of the Association's Complaint, which states, in part:

> On information and belief, these errors, deficiencies and defects, for which the Defendants are legally liable, have caused, and continue to cause, actual property damage, loss of use and/or other losses to the Association, and consequential damage to, and the loss of use of, various elements of **the Project**, over time, from the date those areas were first put to their intended use.

*See* EMC's Memorandum, Doc. 554, p. 15 of 24 (emphasis added). EMC's reliance on this paragraph for the position that the Association did not allege any damage during ongoing operations is misplaced. First, although the Association's Complaint alleged that the units were completed in June 2001, it is silent as to when the remaining elements/areas of the Project were completed. EMC suggests that the entire "Development" (defined by EMC as the St. Andrews development) was completed in June 2001, and therefore the Subcontractors work necessarily had to have been "put to its intended use" by that time. While the Association's Complaint admittedly states that the *units* were completed in June 2001, the Association defined "Project" as not only the 86 condominium units, but also the common areas and common elements and all other structures, spaces and facilities that comprise the property owned by the St. Andrews community. *See* Association's Complaint, p. 2, ¶ 1, attached to EMC's Memorandum as **Exhibit A**, (Doc. No. 554-2, p. 2 of 30). The Association's Complaint is silent with respect to when the entire "Project" was completed, and therefore contains no information as to when work of the Subcontractors was, in fact, put to its intended use. EMC therefore impermissibly presents evidence from outside the four corners of the Complaint, attaching vendor invoices, in an

attempt to establish that, despite the ambiguity in the Association's Complaint as to when the entire Project was completed, the Subcontractors work was completed before the June 2001 date. *Cotter Corp,* 90 P.3d at 827.   The fact that EMC attempts to rely upon extraneous vendor invoices in order to support that the Subcontractor's work was completed by June 2001 supports that the Association's Complaint raises the possibility of damages during the Subcontractor's ongoing operations.

Even more significantly, EMC completely ignores and disregards the second half of that portion of paragraph 45 in the Association's Complaint that specifically states that the occurrence of the alleged property damage was "unmanifested" (or latent) until it progressed to the point that it was reasonably detectable to the Association.  *See* **Exhibit A**, attached to EMC's Memorandum (Doc. 554-2, p. 14 of 30).  Latent defects have been defined as "those manifesting themselves after purchase and which are not discoverable through reasonable inspection." *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041(Colo. 1983).  The mere fact that damages may not have manifested themselves until after the Association took control of the Project, or until after the Association discovered such damages, does not preclude the existence of latent damages.  The Association's Complaint's reference to the possibility of latent damages calls into question whether damages were occurring during the Subcontractor's ongoing operations, and is sufficient to trigger the duty to defend.  Because the Association's Complaint suggests that it is possible that property damage, albeit latent, could have been occurring prior to the time that Subcontractor's work was completed, or even "put to its intended use," EMC owed a duty to defend D.R. Horton under those policies that were undisputedly in effect at the time of the

ongoing operations. EMC's request for summary judgment should therefore be denied.

## VI. CONCLUSION

EMC admits that D.R. Horton is an additional insured under the AAA policy. EMC's argument with respect to the existence of certificates of insurance and D.R. Horton's status as an additional insured under the Dove Creek policies lacks merit in light of the plain language of the EMC additional insured endorsements, which merely require the existence of a certificate of insurance in combination with a written contract requiring that D.R. Horton be named as an additional insured. Because only the contract is required to have been issued during the policy term, and before property damage occurred, and no such limitation exists with respect to the certificates of insurance, EMC's argument that the certificate was issued after the policy expired is inconsequential. As a matter of law, D.R. Horton qualifies as an additional insured under the Dove Creek policies. Finally, there is a sufficient question of fact, calling for additional discovery, with respect to whether D.R. Horton qualifies as an additional insured under the D&S Landscaping policies. EMC's Motion for Summary Judgment cannot be granted based on this ground alone.

EMC also argues that even if the undisputed material facts reveal that D.R. Horton is an additional insured under the Subcontractor's policies (or that disputed facts with respect to this issue preclude summary judgment), because the Association's Complaint did not allege property damage during the ongoing operations of the Subcontractors, even if D.R. Horton is an additional insured, EMC did not owe D.R. Horton a duty to defend. EMC's premise that no property damage occurred during the ongoing operations of the Subcontractors is faulty. The

Association's Complaint raises the possibility that there may have been property damage occurring during the construction of the Project.  The mere fact that such property damage may not have been detected until after the Association took control of the Project is not enough to defeat the duty to defend.  Because there is the possibility that the Association's Complaint asserts damages that occurred prior to the Subcontractors' ongoing operations, *and during the EMC policy periods*, EMC owed D.R. Horton a defense in the Underlying Action under each of the Subcontractors' policies.  EMC's interpretation of the Association's Complaint is too narrow and relies on evidence outside the four corners of the Complaint in analyzing its duty to defend, which is impermissible.

WHEREFORE, Travelers, St. Paul and USF&G respectfully request that this Court deny EMC's Motion for Summary Judgment.

Dated:  October 1, 2008                     *s/ Laura Trask Schneider*
                                            _____
                                            Laura Trask Schneider
                                            Miletich Pearl LLC
                                            999 18th Street, Suite 1850 S Tower
                                            Denver, Colorado 80202
                                            Phone: (303) 825-5500 / Fax: (303) 825-5501
                                            E-mail: lschneider@mprlawllc.com
                                            *Attorneys for Defendants Travelers Indemnity,*
                                            *St. Paul and USF&G*

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on October 1, 2008 I filed TRAVELERS INDEMNITY INSURANCE COMPANY, ST. PAUL FIRE & MARINE, AND UNITED STATES FIDELITY & GUARANTY COMPANY'S BRIEF IN OPPOSITION TO EMPLOYERS MUTUAL CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT (DOC. # 553) AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (DOC. # 554) pursuant to Fed. R. Civ. P. 7.1 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Richard L. Angell, Esq.<br>Christina L. Dixon, Esq.<br>Derek C. Blass, Esq.<br>ZUPKUS & ANGELL, P.C.<br>The McCourt Mansion<br>555 East 8th Avenue<br>Denver, CO 80203<br>rangell@zalaw.com; dblass@zalaw.com;<br>edixon@zalaw.com<br>***Attorneys for Plaintiff*** | Marisa C. Ala, Esq.<br>Eric Seiken, Esq.<br>Palumbo Bergstrom, LLP<br>5655 South Yosemite Street, #201<br>Greenwood Village, CO 80111<br>mala@palumbolawyers.com<br>eseiken@palumbolawyers.com<br><br>***Attorneys for Defendant AIG National Ins.***<br>***Co., Inc. and D.R. Horton, Inc.*** |
| Joseph F. Bermudez, Esq.<br>Suzanne M. Meintzer, Esq.<br>Cozen O'Connor<br>707 17th Street, Ste. 3100<br>Denver, CO 80202<br>jbermudez@cozen.com<br>smeintzer@cozen.com<br><br>***Attorneys for Defendant TIG Insurance***<br>***Company*** | Kevin F. Amatuzio, Esq.<br>Thomas H. Blomstrom, Esq.<br>Montgomery, Kolodyn, Amatuzio &<br>Dusbabek, LLP<br>1775 Sherman Street, 21st Floor<br>Denver, CO 80203<br>kamatuzio@mkadlaw.com<br>tblomstrom@mkadlaw.com<br><br>***Attorneys for Defendant Fulcrum Insurance*** |

| | |
|---|---|
| Patrick Q. Hustead, Esq.<br>Connor L. Cantrell, Esq.<br>Melissa Shisler, Esq.<br>The Hustead Law Firm<br>4643 South Ulster Street, Suite 1250<br>Denver, CO  80237<br>tld@thlf.com; clc@thlf.com; mws@thlf.com<br>**Attorneys for Defendant Continental Western**<br>**Insurance Company** | Vincent P. Tomkiewicz, Esq.<br>Bollinger, Ruberry & Garvey<br>500 West Madison Street, Suite 2300<br>Chicago, IL 60661-2511<br>Vincent.tomkiewicz@brg-law.net<br><br>**Attorneys for Defendant Continental Western**<br>**Insurance Company** |
| Ryan Williams, Esq.<br>Janet B. Martin, Esq.<br>Lasater & Martin, P.C.<br>8822 Ridgeline Blvd, Suite 405<br>Highlands Ranch, CO  80129<br>janet@lasaterandmartin.com<br>ryan@lasaterandmartin.com<br>**Attorneys for Mountain States** | Jane E. Young, Esq.<br>McElroy Deutsch Mulvaney & Carpenter<br>1700 Broadway, Suite 1900<br>Denver, CO  80290<br>jyoung@mdmlawco.com<br>**Attorney for Defendants Assurance Company**<br>**of America, Maryland Casualty & Zurich**<br>**American Insurance Co.** |
| Marc R. Levy, Esq.<br>Levy, Morse & Wheeler, PC<br>6400 South Fiddlers Green Circle<br>Plaza Tower One, Suite 900<br>Englewood, CO  80111<br>Mlevy@levymoresewheeler.com<br>**Attorneys for Mid-Century Ins. Co. and**<br>**Truck Insurance** | John Lebsack, Esq.<br>White & Steele, P.C.<br>950 17th Street, Suite 2100<br>Denver, CO  80202<br>jlebsack@wsteele.com<br>**Attorney for Indian Harbor Ins. Co.** |
| Jon F. Sands, Esq.<br>William B. Stanton, Esq.<br>Fisher, Sweetbaum, Levin & Sands, PC<br>1125 17th Street, Suite 2100<br>Denver, CO 80202<br>jsands@fslpc.com<br>**Attorneys for State Farm Fire & Casualty** | Robert C. Evans, Esq.<br>Evans & Co.<br>823 East 4th Avenue<br>Durango, CO 81301<br>revans@evanslawfirm.com<br>**Attorneys for Employers Mutual Ins. Co.** |

| | |
|---|---|
| Christen A. Mattinson, Esq.<br>Timothy M. Murphy, Esq.<br>Hall & Evans, LLC<br>1125 17th Street, Suite 600<br>Denver, CO 80202<br>mattisc@hallevens.com<br>*Murphyt@hallevans.com*<br>**Attorneys for Transcontinental Insurance and Valley Forge Insurance** | Katherine Taylor Eubank, Esq.<br>Fowler, Schimberg & Flanagan, PC<br>1640 Grant Street, Suite 150<br>Denver, CO 80203<br>k_eubank@fsf-law.com<br>**Attorney for Twin City Fire Ins. Co.** |
| L. Kathleen Chaney, Esq.<br>Amber Ju<br>Lambdin & Chaney, LLP<br>4949 S. Syracuse, Suite 600<br>Denver, CO 80237<br>kchaney@lclaw.net<br>aju@lclaw.net<br>**Attorneys for American Mutual Insurance** | Robert C. Christensen, Esq.<br>Colliau Elenius Murphy Carluccio Keener & Morrow<br>405 Howard Street, Suite 600<br>San Francisco, CA 94105<br>Robert.christensen@cna.com<br>**Attorneys for Valley Forge Insurance Company and National Fire Insurance Company** |
| Eric J. Strobel, Esq.<br>Hinshaw & Culbertson, LLP-Minneapolis<br>333 South 7th Street #2000<br>Minneapolis, MN 55402<br>estrobel@hinshawlaw.com<br>**Attorneys for General Accident Insurance Company, Hawkeye-Security Insurance Company and United Security Insurance Company** | Joshua F. Bugos, Esq.<br>Brian J. Spano, Esq.<br>Rothgerber Johnson & Lyons, LLP<br>One Tabor Center, Suite 3000<br>1200 17th Street<br>Denver, CO 80202-5855<br>jbugos@rothgerber.com<br>**Attorneys for Defendant Liberty Mutual Insurance** |

*/s/ Laura Trask Schneider*

Laura Trask Schneider, Esq.
Miletich Pearl, LLC
999 Eighteenth Street
Suite 1850 – South Tower
Denver, CO 80202
Phone: (303) 825-1670
Fax: (303) 825-1621
E-Mail Address: lschnedier@mplawllc.com