IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00600-PAB

TRINITY UNIVERSAL INSURANCE COMPANY of KANSAS, INC.,

   Plaintiff,

v.

D.R. HORTON, INC.- DENVER D/B/A D.R. HORTON- TRIMARK SERIES,
AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
AMERICAN INTERNATIONAL SPECIALITY LINES INSURANCE COMPANY,
ASSURANCE COMPANY OF AMERICAN,
CONTINENTAL WESTERN INSURANCE COMPANY,
EMPLOYERS MUTUAL CASUALTY COMPANY,
FULCRUM INSURANCE COMPANY N/K/A GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA,
INDIAN HARBOR INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY,
MARYLAND CASUALTY COMPANY,
MID-CENTURY INSURANCE COMPANY,
MOUNTAIN STATES MUTUAL CASUALTY COMPANY,
NATIONAL FIRE INSURANCE COMPANY OF HARTFORD,
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA,
ST. PAUL FIRE & MARINE INSURANCE COMPANY,
STATE FARM FIRE AND CASUALTY COMPANY,
TIG INSURANCE COMPANY,
TRAVELERS INDEMNITY INSURANCE COMPANY,
TRUCK INSURANCE EXCHANGE,
TWIN CITY FIRE INSURANCE COMPANY,
UNITED SECURITY INSURANCE COMPANY,
UNITED STATES FIDELITY & GUARANTY COMPANY,
VALLEY FORGE INSURANCE COMPANY,
ZURICH AMERICAN INSURANCE COMPANY,
ZURICH SPECIALTIES LONDON LIMITED,

   Defendants.

# AMENDED RECOMMENDATION TO GRANT MARYLAND CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (DOC. 351)

The Defendant/Cross-Defendant, Maryland Casualty Company (Maryland) filed a Motion for Summary Judgment [Doc 351] and Brief [352]. The Travelers Entities filed their Response [Doc. 405] and Consolidated Response [Doc. 698]. Trinity Universal Insurance Company of Kansas, Inc. filed its Response. [Doc. 406]. Maryland filed its Reply Brief. The parties were given until December 4, 2008 to file additional pleadings. The Motion is at issue.

## I. BACKGROUND

The St. Andrew at Plum Creek Condominium Association (Association) filed a complaint against D.R. Horton, Inc and its subsidiary corporations in the Douglas County District Court, State of Colorado. (Underlying Action). It alleged eight claims for relief because of defective design, development and construction of the project. D.R. Horton required subcontractors to name D.R. Horton and its subsidiary corporations as an "additional insured" in their liability policies. After the filing of the Underlying Action, D.R. Horton gave notice of the suit and tender of defense to some but not all of the subcontractors and their insurance companies. The D.R. Horton insurers (DRH) defended the Underlying Action and settled with the Association.

D.R. Horton and DRH sought recovery from Trinity for the attorney fees, defense costs and indemnification from the subcontractors insurance companies. Trinity endorsed D.R. Horton in its policy. Trinity filed this declaratory action to declare the Trinity coverage to D.R. Horton as void *ab initio* or "In the alternative, Trinity should be liable for only that portion of D.R.Horton defense costs and indemnification that represents a fair allocation to limits among all parties who

are or may have been responsible for the payment of such defense costs." [Doc. 101, ¶170] It named as defendants the insurance companies of subcontractors who provided construction on the St. Andrews condominiums.

Maryland issued two policies: (1) a Contractor's policy to B&D Foundations Inc., Policy No. CON98501365, effective March 15, 2002 to March 15, 2003 [Doc.352-5]; and (2) a Precision Portfolio Policy to Bischolf and Coffman Concrete, LLC, Policy No. SCP36760321 effective August 26, 2000 to August 26, 2001[Doc. 352-3].

B&D Foundations entered into an Independent Contractor Agreements with D.R. Horton on December 29, 1999; November 1,2000; March 9, 2000 and July 21, 2000. B&C Concrete entered into an independent contract with D.R. Horton on March 1, 2000. (Travelers Brief, pp 5-6,)

> The Association in the Underlying Complaint alleges in part as follows:
>
> ¶2.  The Community's existing 86 units were completed in approximately June 2001.
>
> ¶21. In or about 1998, Horton became the developer and Declarant for the Projects and Community and assumed control of the Associations's Board which control was exercised by Horton ...until approximately November 13, 2001.
>
> ¶45. On information and belief, these errors; deficiencies and defects, for which the Defendants are legally liable, have caused and continue to cause, actual property damage, loss of use and/or losses to the Association , and consequential damage to, and the loss of use of, various elements of the Project, <u>over time from the date those areas were first put to their intended use. The occurrence of this property damage and/ or loss of use was unmanifested and unknown to the Association until it progressed to the point it was reasonably detectable to the Association.</u> (Emphasis added) [Doc. 352-2]

Maryland has not specifically endorsed D.R. Horton but acknowledges that D.R. Horton is an additional entity under the policies. Because there is not a specific endorsement, the policies do not have the "ongoing operations" terminology provided by other insurance companies. The Maryland policy provisions are as follows:

> 2. Each of the following is also an insured:
> ***

f. Any person or organization other than an architect, engineer, or surveyor, which requires in a "work contract" that such person or organization be made an insured under this policy. However, such person or organization shall be an insured only with respect to covered "bodily injury", "property damage", "personal injury" or "advertising injury" which results from "your work" under that "work contract."

The coverage afforded to such person or organization does not apply to "bodily injury" or "property damage" occurring after the following times:

(1) When "your work" under the "work contract" (other than service, maintenance, or repairs) has been completed.

(2) When that portion of "your work" under the "work contract" out of which any injury or damage arising has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

(3) When our coverage or you under this policy or a renewal of this policy terminates and is not continued by other insurance provided by us.

[Doc. 352, Ex. B-35; Ex. C-73-74]

***

"Your work" means:

a. Work or operations performed by you or on your behalf, but does not include work or operations performed by another entity which joined with you to form a partnership or joint venture not shown as a Named Insured in the Declarations, which terminated or ended prior to the effective date of this policy;

***

"Your work" includes:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"

[Doc. 352, Ex.B-43; Ex.C-81and 81]

## II. MOTION FOR SUMMARY JUDGMENT

Maryland filed its Motion for Summary Judgment alleging that based upon the Underlying Complaint the ongoing operations of B&D and Bischof and Coffman ended when the Association put the property to its intended use in accordance with ¶ 45. It requests that the Complaint and Cross-Claims be dismissed.

# III. STANDARD OF REVIEW

Summary judgment should be granted where "there is no genuine issue as to any material act and movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pelt v. Utah,* 539 F.3d 1271, 1280 (10th Cir. 2008).

When the motion for summary judgment is to determine whether an insurance company has the duty to defend in an underlying lawsuit, the court should look no further than the four corners of the underlying complaint. *American Insurance Company v. O'Hara Center for Rehabilitation,* 529 F.2d 916, 921 (10th Cir. 2008); *Cyprus Amax Minerals Co., v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo. 2003).

# IV. DISCUSSION

D.R. Horton and DRH have filed a Notice of Non-Opposition to Maryland's motion.[Doc. 388]. D.R. Horton states: "Horton and DRH Insurers agree with MCC that D.R. Horton and DRH Insurers have not pursued MCC directly and seek no damages from MCC in this action." D.R. Horton in Doc. 574 held that where an insurance company has an "ongoing operations" clause, the company has no duty to defend or indemnify D.R. Horton after the property is put to its intended use. [Doc. 574, pp. 5-7]

**A. Ongoing operations.**

It is an undisputed fact that Maryland issued two policies: (1) a Contractor's to B&D Foundations, Inc., Policy No. CON98501365 and (2) a Precision portfolio Policy to Bischof and Coffman Concrete, LLC, Policy No. SCP36760321. It is not disputed that D.R. Horton is an additional insured under the policies. Both policies provide:

> The coverage afforded to such person or organization does not apply
> to "bodily injury" or "property damage" occurring after the earliest of

the following times:

(1) When "your work' under the "work contract" (other than service, maintenance or repairs) has been completed.

(2) When that portion of "your work' under the "work contract" out of which any injury or damage arising has other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

(Doc. 352, ex. B-35; Ex. C-73and 74)

Maryland relies upon the following paragraphs of the Underlying Complaint by the Association:

¶ 2. The Community's existing 86 units were completed in approximately June 2001.

¶21. In or about 1998, Horton became the developer and Declarant for the Projects and Community and assumed control of the Association's Board which control was exercised by Horton (through, among others, Francescon and Wilson) until approximately November 13, 2001.

¶45. On information and belief, these errors; deficiencies and defects, for which the Defendants are legally liable, have caused and continue to cause, actual property damage, loss of use and/or losses to the Association, and consequential damage to, and the loss of use of, various elements of the Project, <u>over time from the date those areas were first put to their intended</u>

> use. The occurrence of this property damage and/or loss of use was
> unmanifested and unknown to the Association until it progressed to the
> point it was reasonably detectable to the Association. (Emphasis added)

The parties agree that the court should not look any further than the four corners of the underlying complaint to determine if a duty to defend exists under an insured's policy. <u>Zurich American Insurance Company v. O'Hara Regional Center for Rehabilitation,</u> 529 F. 3d 916, 921 (10th Cir. 2008); <u>Lopez v. American Family Mut. Ins. Co.,</u> 148 P.3d 438, 439 (Colo. App. 2006); <u>Cyprus Amax Minerals Co. v. Lexington Ins. Co.,</u> 74 P.3d 294, 299 (Colo. 2003).

The Traveler Entities in their response [Doc 405] allege that the Underlying Complaint sets forth multiple design and construction defects that led to the damages of the Association. The allegation in ¶32 of the Underlying Complaint states as follows: "Upon information and belief, the various subcontractors and independent contractors involved in the design, development and construction of the Project and responsible for creating the defectively designed and constructed elements described elsewhere in the Complaint, ... were delegated a part of these development and construction activities by Horton and Trimark..." Traveler Entities state "Because there is a possibility of coverage under the policies exists, Maryland Casualty owes D..R. Horton a duty to defend." Traveler Entities in a Consolidated Response in Opposition to motions for summary judgment filed by other insurance companies having an "ongoing operations" states: "The question is whether the Complaint filed in the Underlying Action raises the possibility of property damage prior to that time that the Homeowners and Homeowners Association took control of the property". [Doc. 698, pp 12-13].

All of the allegations in the Underlying Complaint setting forth defects in construction or

design are limited by the time periods set forth in the four corners of the Complaint. The Association alleges that construction was completed approximately June 2001 (¶ 5). The control of the Association was turned over to the unit owners in November 2001 by D.R. Horton (¶ 21) The damages claimed occurred "over time from the date those areas were first put to their intended use." "The occurrence of this property damage and/or loss of use was unmanifested and unknown to the Association until it progressed to the point it was reasonably detectable to the Association." (¶ 45). The language is clear and is unambiguous that the property was put to its intended use prior to damages being discovered.

As judicially noticed by U.S. District Judge Daniel in <u>Royal Indemnity Company v. American Family Mutual Insurance Company,</u> 2008 U.S. Dist. LEXIS 70871 (D. Colo. 2008), Douglas County, Colorado has adopted the Uniform Building Code which requires a Certificate of Occupancy before an owner can put the property to its intended use. The Code reads as follows:

> **Sec. 109.1 Use and Occupancy.** Delete Sec. 109.1 in its entirety and substitute the following: No building or structure shall be used or occupied, and no change in existing occupancy of a building or portion thereof shall be made until the Building Official has issued a Certificate of Occupancy therefore as provided herein. [Doc. 691, Ex. G].

The unit owners and Association could not have put the property to its intended use until the construction was complete and the Certificate of Occupancy issued.

The Colorado Supreme Court in <u>Weitz Co., LLC v. Mid-Century Ins. Co.,</u> 181 P.3d 309, 315 (Colo. App. 2007) <u>cert denied</u> (2008), the court held: "Thus, we conclude that under the plain and ordinary meaning of "arising out of your ongoing operations" the endorsement to the policy does not cover "completed operations" and the insurer has no duty to defend or indemnify the general contractor under the circumstances here." In *Weitz* the owner, after taking possession, discovered heaving of floor slabs because of water intrusion which damaged the floor and walls. Two years after the damage, suit was brought against the general contractor. The general

contractor brought suit against the subcontractors as an additional insured under the CGL policies of the sub-contractors which had an "ongoing operations" clause. The court held that Mid-Century's duty to defend or indemnify ended when the work was completed and the certificate occupancy was issued.

The *Royal Indemnity* case decided by Judge Daniels has facts very similar to the Trinity case. The Canyon Ranch Condominium Association brought an action against the general contractor for damages that were a result of design and construction deficiencies discovered after the owners had taken possession. Royal Indemnity brought an action against the subcontractors insurance carriers who had endorsed the general contractor in the CGL policies. American Family Insurance Company policy had an "ongoing operations" clause for work performed by the subcontractor. Judge Daniels held: "I find that <u>Weitz</u> is directly on point and summary judgment is appropriate." <u>Royal Indeminity, supra</u>.

Maryland also relies on a judgment entered by State District Judge Sandstead of the Boulder District Court in <u>General Security Indemnity Company of Arizona, f/k/a Fulcrum Insurance Company v. American Family Mutual Insurance Company. [Doc 352-9].</u> D.R. Horton was the general contractor in the construction of Summit at Rock Creek. The HOA brought an action for design and construction deficiencies. General Security as a sub-contractor filed an action against other sub-contractor insurance companies including American States Insurance Company. Similar to the Maryland policies, there was not a specific indorsement to D.R. Horton but the Liability Plus Employment provision provided liability to D.R. Horton. It further provided the same terminology as in the Maryland policies in the Products-completed operations hazard: "(2) "However "your work" will be deemed completed at the earliest of the following times: (c) When that part of the work done at a job site has been put to its intended use by any person or

organization other than another contractor or subcontractor working on the same project." The Court held that the policy did not apply to completed work after the property was put to its intended use.

The endorsement of the Maryland policy is for the benefit of the general contractor, D.R. Horton. D.R. Horton in response to Maryland's Motion for Summary Judgment filed its "Notice of Non-Opposition to the Motion". [Doc. 388]. D.R. Horton agrees that where a policy has an ongoing operations clause, the policy does not apply to completed operations citing *Weitz.* D.R. Horton stated in [Doc. 574, pp. 6-7] "Since the St. Andrews Condominium Association in the underlying action alleged that the property damage did not begin until after the property was put to its intended use, there is no potential for coverage in favor of D.R. Horton under the Truck policy." The Travelers Entities in their response [Doc. 405, p. 13] acknowledge that "ongoing operations" are not "completed operation" as held in *Weitz.* Trinity in its response [Doc. 406, p.8] also acknowledges that 'ongoing operations" does not provide coverage for completed operations.

The words of the Maryland policies should be given their plain and ordinary meaning. *American Family Mut. Ins. Co. v. Allen,* 102 P. 3d 333, 340 (Colo. 2004). If the language of the policy is unambiguous the policy must be enforced as written. *Hoang v.Assurance Co.* ,149 P. 3d 798, 801 (Colo. 2007). The Maryland policies specifically limit coverage to ongoing operations. Coverage ends when the work is completed and/or when the property is put to its intended use. According to the Complaint ¶ 45, the Association put the property to its use and that defects in construction and damages were discovered thereafter.

**B. Occurrence policy**

Maryland Casualty issued to BC Concrete a policy from August 26, 2000 to August 26, 2002. (Doc. 352-3). The policy provides:

      a. Insuring Agreement.
          (1) We will pay for "property damage" to "covered Property" of other caused by an "occurrence" to which the insurance applies.
          (2) This insurance applies to "property damage" to "covered property" only if:

                        \* \* \*

      (b) The "property damage" to "covered property" occurs during the policy period; (Doc. 352-3 p.21)

      (c) The damages are incurred and reported to us within one year of the date of the "occurrence".

The law is well established in Colorado that under an "occurrence" policy, coverage only applies where the damage occurs during the policy period. *Globe Indemnity Co. v. Travelers Indemnity Company of Illinois,* 98 P.3d 971, 974 (Colo App 2004); *Leprino v. Nationwide Property and Casualty Co,* 89 P.3d 487, 490 (2003). As Judge Daniel stated in *Royal Indemnity Company, supra.* "I find that *Weitz* is directly on point and summary judgment is appropriate. In this case all of the insurance policies at issue in the case are "occurrence" policies, meaning that coverage is triggered only if an accident results in property damaged occurring during the policy period *Leprino v. Nationwide Prop & Cas. Co,* 89 P.3d 487, 490 (Colo. App. 2003) *cert. denied* (2004)." CGL policies are not intended to act as a performance bond and cover faulty workmanship. *Adair Group, Inc. v. St. Paul Fire and Marine Ins Co.,* 477 F.3d 1186, 1188 (10th Cir 2007); *Mc Gowan v. State Farm Fire & Cas.Co.*, 100 P.3d 521, 525 (Colo App. 2004).

      Travelers argues that since the policy period ended on August 26,2001 that the claims "potentially could fall within the coverage afforded by the policy." Travelers ignores the clear statement in ¶45 that after the property was put to its intended use "The occurrence of this property damage and/or loss was unmanifested and unknown the association until it progressed to the point is was reasonably detectable by the Association,". The discovery of damages was after the property

was put to its intended use and after the expiration of the Maryland policy.

## CONCLUSION

I find that Maryland Casualty had no duty to defend or indemnify D.R. Horton in the Underlying Complaint after the Association took possession and commenced to put the property to its intended use. Maryland Casualty also had no liability after the CGL policy expired on August 26, 2001. The cross-claimants and Trinity have no right to pursue Maryland Casualty for equitable subrogation or indemnity when Maryland had no duty to defend or indemnify D.R. Horton. *Cotter Corp v. American Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 834 (Colo. 2004).

**IT IS RECOMMENDED** that Maryland Casualty Company's Motion for Summary Judgment [Doc. 356] be granted. Judgment should enter dismissing the Complaint of Trinity Universal Insurance of Kansas, Inc [Doc. 101] and the cross-claims of Travelers Indemnity Insurance

Company [Doc. 137]; St. Paul Fire & Marine Insurance Company [Doc 258]; United States Fidelity & Guaranty Company [Doc. 285]; Valley Forge Insurance Company [Doc 447]; National Fire Insurance Company of Hartford [ Doc 447] and Employers Mutual Casualty Company [Doc. 468].

Done this 11th day of March, 2009.

**BY THE COURT**

*/s/* Donald E. Abram

Special Master